**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **AUSTIN SOLECITTO,** | **Civil Action No.: 23-23125 (ES) (LDW)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **AXON ENTERPRISE, INC.,** | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

It appearing that:

1.    Before the Court is Defendant Axon Enterprise, Inc.'s ("Defendant") motion for summary judgment.  (D.E. No. 20).  Having carefully considered the parties' submissions and other relevant portions of the record, the Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

2.    In this action, Plaintiff Austin Solecitto ("Plaintiff") alleges that Defendant terminated his employment because of his hearing disability.  (D.E. No. 1 at 9 of 13 (ECF pagination) ("Complaint or "Compl.") ¶ 17).  Plaintiff has asserted a single cause of action seeking relief under the New Jersey Law Against Discrimination.  (*Id.* ¶¶ 15-21).

3.    On January 19, 2024, Defendant filed a motion to dismiss Plaintiff's Complaint, arguing that Plaintiff was required to submit his claim to mandatory arbitration pursuant to the parties' contractual agreement.  (D.E. No. 6).  By Order dated September 16, 2024, and noting that Plaintiff had "cast[] doubt on the authenticity of the signature on the arbitration agreement," (D.E. No. 9 at 2), the Hon. Michael E. Farbiarz, U.S.D.J., denied Defendant's motion to permit the parties

"to conduct highly targeted discovery on the arbitrability question." (*Id.* at 3). Judge Farbiarz further directed that, once that discovery was complete, either party "may move for summary judgment, focused on the question of whether this case must be arbitrated and who is to decide that question." (*Id.*).

4.    The parties completed the aforementioned discovery under the direction of the Hon. Leda D. Wettre, U.S.M.J., and Defendant filed its motion for summary judgment on February 10, 2025. (D.E. No. 20; D.E. No. 20-1 ("Mov. Br")). Plaintiff filed his opposition on February 24, 2025, (D.E. No. 21 ("Opp. Br."), and Defendant filed its reply on March 10, 2025. (D.E. No. 22 ("Reply Br.")).

5.    By Order dated May 8, 2025, the Hon. Renée Marie Bumb, U.S.D.J., reassigned this matter to the Undersigned. (D.E. No. 23).

6.    Where, as here, a court must refer beyond the pleadings to decide a motion to compel arbitration, the motion is properly analyzed under the summary judgment standard. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). Summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In ruling on the motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all inferences in favor of that party. *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). A factual dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-movant. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). At the summary judgment stage, a court is not permitted to make credibility determinations or weigh the evidence. *Id.* at 428–29. In the

context of a motion to compel arbitration, "summary judgment is not warranted" where "'the party opposing arbitration can demonstrate, by means of citations to the record,' that there is 'a genuine dispute as to the enforceability of the arbitration clause.'" *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).

       7.     The Court finds that the following material facts are not in genuine dispute:[1]

a.     Plaintiff joined Defendant as an Enterprise Sales Development Representative. (D.E. No. 20-2 ("Def. Statement of Fact") ¶ 6).

b.     Defendant offered Plaintiff that role on February 15, 2022. (*Id.* ¶ 7). Though Defendant initially made the offer verbally, Plaintiff "anticipated and expected to receive an official written offer for him to accept." (*Id.* ¶ 12). Plaintiff knew that he would have to sign the "official letter" to finalize Defendant's offer of employment. (*Id.* ¶ 15).

c.     On February 15, 2022, at 4:25 p.m., Defendant electronically sent the offer materials to Plaintiff using the DocuSign platform. (*Id.* ¶ 16). Those materials included a "Full-Time Employment Offer Letter" ("Offer Letter") and an "At-Will Employment, Confidential Information, Invention Assignment, Non-Compete/Non-Solicitation, and Arbitration Agreement" ("Employment Agreement"). (*Id.* ¶ 17).

d.     Defendant "would not proceed forward with employment without an employee signing these documents." (*Id.* ¶ 18).

e.     Although Plaintiff first opened the Offer Letter and Employment Agreement at 4:33 p.m. on February 15, 2022, he did not immediately sign them. (*Id.* ¶ 23). Rather, the record

---

[1]     The Court derives these facts based on (i) appropriately supported paragraphs from Defendant's Statement of Material Facts that Plaintiff has either admitted or has failed to rebut, (ii) the undisputed language of the parties' alleged contractual agreement, and (iii) Plaintiff's deposition testimony.

reflects that Plaintiff sent himself a printable copy of those materials at 5:14 p.m.  (*Id.* ¶ 24 (citing D.E. No. 20-4 at 56 of 146 ("Shanmuganatha Cert. Ex. 7"))).

f.   Plaintiff ultimately signed the Employment Agreement using the DocuSign platform.  (*Id.* ¶ 34; D.E. No. 21-1 ("Pl. Statement of Facts") at 7, ¶ 34).  He did so at 6:34 p.m. on February 15, 2022.  (Shanmuganatha Cert. Ex. 7).  Plaintiff confirmed during his deposition that he personally populated the relevant signature fields (i.e., his electronic signature was genuine).  (D.E. No. 20-4 at 14–39 (ECF pagination) ("Solecitto Dep. Tr.") at 50:2–9).

g.   Plaintiff testified that while the DocuSign platform's "autonav" feature skipped through the Employment Agreement to the portions that required his signature or initials, he *could* have scrolled through it manually and reviewed the entire document.  (Solecitto Dep. Tr. at 44:14–18; 46:3–5, 22–25).  Nothing prevented him from doing so.  (*Id.* at 48:25–49:3). He testified that it "didn't feel appropriate" to review the full document (or even the entirety of the sections he initialed), and that he assumed he was simply "filling out an Offer Letter."  (*Id.* at 47:23-24; 48:1-7).

h.   Section 5 of the Employment Agreement is titled "Arbitration and Equitable Relief" (D.E. No. 20-4 at 68–88 (ECF Pagination) ("Employment Agreement") § 5), and states, in relevant part:

> *Arbitration*. EXCEPT AS PROVIDED IN SECTION 5.b BELOW AND CONSISTENT WITH THE FEDERAL ARBITRATION ACT (9 U.S.C. SECTION 1 ET SEQ.), I AGREE THAT ANY PAST, PRESENT, OR FUTURE DISPUTES, CLAIMS OR CONTROVERSIES THAT THE COMPANY MAY HAVE AGAINST ME OR THAT I MAY HAVE AGAINST THE COMPANY OR ANY COMPANY EMPLOYEE, OFFICER, DIRECTOR, AGENT, SHAREHOLDER, BENEFIT PLAN, IN THEIR CAPACITY AS SUCH OR OTHERWISE (OR THE

SUCCESSOR AND ASSIGNS OF ANY OF THEM), INCLUDING BUT NOT LIMITED TO DISPUTES ARISING OUT OF, RELATING TO, OR CONCERNING MY EMPLOYMENT OR THE TERMINATION OF EMPLOYMENT, ANY INTERPRETATION, CONSTRUCTION, PERFORMANCE OR BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION TO BE HELD IN MARICOPA COUNTY, ARIZONA, IN ACCORDANCE WITH THE EMPLOYMENT DISPUTE RESOLUTION RULES THEN IN EFFECT OF THE AMERICAN ARBITRATION ASSOCIATION. THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY INDIVIDUAL REMEDIES APPLCABLE UNDER THE LAW, INCLUDING INJUNCTIONS OR OTHER RELIEF IN SUCH DISPUTE OR CONTROVERSY. THE DECISION OF THE ARBITRATOR SHALL BE FINAL, CONCLUSIVE AND BINDING ON THE PARTIES TO THE ARBITRATION. JUDGMENT MAY BE ENTERED ON THE ARBITRATOR'S DECISION IN ANY COURT HAVING JURISDICTION . . . THIS ARBITRATION CLAUSE CONSTITUTES A WAIVER OF MY (I.E. EMPLOYEE'S) RIGHT TO A JURY TRIAL AND RELATES TO THE RESOLUTION OF ALL DISPUTES RELATING TO ALL ASPECTS OF THE EMPLOYER/EMPLOYEE RELATIONSHIP (EXCEPT AS PROVIDED IN SECTION 5.b BELOW), INCLUDING, BUT NOT LIMITED TO, THE FOLLOWING CLAIMS:

i)      ANY AND ALL CLAIMS FOR WRONGFUL DISCHARGE OF EMPLOYMENT . . .

ii)     ANY AND ALL CLAIMS FOR VIOLATION OF ANY FEDERAL, STATE OR MUNICIPAL STATUTE . . .

iii)    ANY AND ALL CLAIMS ARISING OUT OF ANY OTHER LAWS AND REGULATIONS RELATING TO EMPLOYMENT OR EMPLOYMENT DISCRIMINATION.

(Employment Agreement § 5(a)).

i.    In addition, Section 5(e) of the Employment Agreement, subtitled "Voluntary Nature of Agreement," included the following language in bold print:  "**I AM WAIVING MY RIGHT TO A JURY TRIAL**."  (Employment Agreement § 5(e) (emphasis in original).

5

The DocuSign platform required Plaintiff to add his initials directly under that section. (*Id.*).

8.      The Federal Arbitration Act (the "FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'"  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)).  "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."  *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009).  A court must order the parties to proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.  By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."  *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999).  The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'"  *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).  Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

9.      "Where parties' briefs assume that a particular forum's law controls, such implied consent . . . is sufficient to establish choice of law."  *Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am.*, 739 F. Supp. 3d 259, 263 (D.N.J. 2024) (quoting *Marino v. Brighton Gardens of Mountainside*, 697 F. Supp. 3d 224, 229, 2023 WL 6366013, at *2 (D.N.J. Sept. 29, 2023) (citation modified) (collecting cases).  Here, the parties have briefed their dispute regarding the existence

of a valid arbitration agreement under New Jersey law.  (*See generally* Mov. Br., Opp. Br. & Reply Br.).  The Court will therefore apply New Jersey law when resolving that point.

10.    "[T]he threshold issue is whether under state law the arbitration agreement constitutes a valid contract to arbitrate." *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 878 (N.J. 2002).  "Under New Jersey law, a 'valid and enforceable' contract has a fixed set of basic ingredients: offer, acceptance, and consideration." *Stabile v. Macy's, Inc.*, 751 F. Supp. 3d 429, 433 (D.N.J. 2024) (citing *Goldfarb v. Solimine*, 245 A.3d 570 (N.J. 2021)).  Here, Defendant's offer (presenting Plaintiff with the Employment Agreement) and consideration (Plaintiff's employment, which the parties agree was contingent on Plaintiff signing the Employment Agreement) are clear, and not in dispute.  *See, e.g.*, *Martindale*, 800 A.2d at 879 ("The arbitration agreement contained in the Application for Employment signed by plaintiff was supported by consideration in the form of defendant's willingness to consider employment of plaintiff.").  Plaintiff essentially argues, however, that he never effectively "accepted" the terms of the arbitration provision that he ultimately signed.

11.    Plaintiff no longer challenges the authenticity of his signature on the Employment Agreement.  While Plaintiff admits that he added his signature and initials to the Employment Agreement using the DocuSign platform, he argues, primarily, that the arbitration provision is nonetheless unenforceable, as he did not read it (because the DocuSign platform's "autonav" feature skipped over large swaths of the Agreement), and thus did not understand its terms.  In short, Plaintiff contends that the arbitration agreement is unenforceable for lack of mutual assent. (Opp. Br. at 7–10).  As one Judge in this District recently found, however, "[a]ny failure by Plaintiff to actually review the content of [an] agreement before signing is irrelevant to determining mutual assent." *Stockling v. Evicore Healthcare MSI, LLC*, No. 23-21855, 2024 WL 3409444, at *3

(D.N.J. July 15, 2024).  Put another way, "[u]nder New Jersey law, '[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms.'  A party who assents to a contract, however, is bound by all the terms of a contract, even those terms that the party did not read or specifically discuss." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 290 (3d Cir. 2017) (first quoting *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016); and then citing *Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69, 84 (N.J. 1960)).  Moreover, courts measure mutual assent "not by the parties' subjective intent, but rather by their outward expressions of assent." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008); *HSM Const. Servs., Inc. v. MDC Sys., Inc.*, 239 F. App'x 748, 751 (3d Cir. 2007) ("The parties' objective manifestations control in deciding whether they formed a contract by mutual assent.").

12.     For instance, the United States Court of Appeals for the Third Circuit has declined to "create an exception to the objective theory of contract formation where a party is ignorant of the language in which a contract is written." *Morales*, 541 F.3d at 222.  In *Morales*, the Third Circuit enforced an arbitration agreement written in English despite the fact that the employee who signed it could not read the language, finding that it was the employee's "obligation to ensure he understood the Agreement before signing." *Id.* at 223.  Indeed, the Third Circuit explicitly rejected the idea—which Plaintiff raises in his opposition—that courts should apply a "heightened 'knowing and voluntary' [waiver] standard" in the context of arbitration agreements, noting that doing so "would be inconsistent with the FAA." *Id.* at 224

13.     Here, as in *Morales*, Plaintiff provided his mutual assent to the Employment Agreement by signing it. *See id.*  ("Morales' signature manifested his assent to the entire Agreement, and he is bound by the arbitration clause therein.").  He also specifically provided his

assent vis-à-vis the arbitration provision contained therein by separately initialing it. The undisputed record reflects that, to the extent Plaintiff failed to read any part of the Employment Agreement, including its arbitration provision, it is because he *chose* to do so. Specifically, Plaintiff downloaded a full "printable copy" of the Employment Agreement before signing or initialing it, (Def. Statement of Fact ¶ 24 (citing Shanmuganatha Cert. Ex. 7)), and acknowledged at his deposition that, even with the "autonav" feature skipping between signature and initial blocks in the electronic version of the document, nothing prevented him from scrolling through and reading the entire agreement on the DocuSign platform. (Solecitto Dep. Tr. at 44:14–18; 46:3–5, 22–25). Plaintiff further admitted that nothing otherwise prevented him from reading the entire agreement. (*Id.* at 48:45–49:3). Conceptually, using DocuSign's autonav feature the way Plaintiff did is akin to having a hard-copy of the agreement featuring "SIGN HERE" flags at the relevant signature blocks, and then signing where indicated while ignoring nearly everything else in the document. (*Id.* at 43:7-25 (Plaintiff confirmed that he "read the context around whatever [he was] signing or initialing" but did not read the entirety of the document)). A party's decision to refrain from reading an arbitration agreement before signing it, despite having an opportunity to do so, does not render that agreement unenforceable under New Jersey contract law. *Aliments Krispy Kernels, Inc.*, 851 F.3d at 290. Plaintiff has not cited any compelling law to the contrary. (*See generally* Opp. Br.). Here, the undisputed facts in the record regarding Plaintiff's "outward expressions of assent" reflect that Plaintiff accepted Defendant's offer, thereby (when coupled with Defendant's consideration) forming a valid, binding agreement to arbitrate.

14.    The Court also rejects Plaintiff's arguments that either the content of the agreement, or the circumstances under which Defendant presented it to him, render it unenforceable. For instance, Plaintiff argues that text of the arbitration provision is insufficient, "as it fails to clearly

explain the arbitration process and highlight any difference between arbitration and litigation." (Opp. Br. at 10). This argument has two subparts. First, Plaintiff contends that the provision "simply failed to inform [him] of what exactly he purportedly waived." (*Id.* at 11). The plain text of the provision belies that argument. (*See, e.g.*, Employment Agreement at § 5(a) (specifying that all claims between the parties would be subject to binding arbitration, and that "THIS ARBITRATION CLAUSE CONSTITUTES A WAIVER OF MY (I.E. EMPLOYEE'S) RIGHT TO A JURY TRIAL AND RELATES TO THE RESOLUTION OF ALL DISPUTES RELATING TO ALL ASPECTS OF THE EMPLOYER/EMPLOYEE RELATIONSHIP.")). Contrary to Plaintiff's contention, the Court finds that the provision clearly indicated that all claims related to his employment with Defendant would be subject to binding arbitration. The second subpart of Plaintiff's argument is based on language from the Third Circuit's opinion in *Moon v. Breathless Inc.*, 868 F.3d 209 (3d Cir. 2017). (Opp. Br. at 11). In *Moon*, when interpreting the enforceability of arbitration provisions under New Jersey law, the *Third Circuit* noted a requirement that such provisions "must explain the difference between arbitration and litigation." *Moon*, 868 F.3d at 214. Plaintiff cites that language without providing context or any further explanation of how the Third Circuit applied it. (Opp. Br. at 11). The *Moon* court elaborated, however: "'The waiver-of-rights language . . . must be clear and unambiguous—that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum.'" *Moon*, 868 F.3d at 214 (quoting *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 315 (N.J. 2014). The *Moon* court also cited *Martindale* in support of its "explain the difference" language, noting that the New Jersey Supreme Court had "enforce[ed] an arbitration clause because it, *inter alia*, 'addressed specifically a waiver of the right to a jury trial, augmenting the notice to all parties to the agreement that claims involving jury trials would be resolved instead through arbitration.'" *Id.* The Court

finds that the arbitration provision at issue here did both things that the *Moon* court referenced; it clearly indicated that the parties' disputes would be subject to binding arbitration, and that Plaintiff waived his right to a jury trial regarding those disputes. (Employment Agreement §§ 5(a) & (e)).

15.     Plaintiff also argues that the Employment Agreement is unenforceable because it was non-negotiable, and Defendant presented it to him on "take-it-or-leave-it" basis. (Opp. Br. at 9–10). Neither of the cases Plaintiff cites for that proposition, however, involved an arbitration agreement. (*Id.* (first citing *Riddell v. Medical Inter-Insurance Exchange*, 18 F. Supp. 2d 468 (D.N.J. 1998) (involving the release of claims in exchange for a severance package); and then citing *Coventry v. U.S. Steel*, 856 F.2d 514 (3d. Cir. 1988) (involving the release of claims in exchange for pension benefits)). When addressing arbitration agreements specifically, the New Jersey Supreme Court has noted: "Virtually every court that has considered the adhesive effect of arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee." *Martindale*, 800 A.2d at 880. The *Martindale* court further found that, even if the arbitration agreement before it *could* be characterized as a contract of adhesion, "the agreement's subject matter and the public interests affected lead to the conclusion that it should not be invalidated." *Id.* at 881 (noting that the terms of the agreement were not "oppressive" or "unconscionable" and that "affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes"). The Court finds that the same is true here with regard to the arbitration provision contained in the Employment Agreement.

16.     Based on the foregoing, the Court finds that the parties have entered into a valid arbitration agreement. The next step in the analysis requires an examination of whether "the

dispute at issue falls within the scope of that agreement." *Century Indem. Co.*, 584 F.3d at 523. The parties disagree on who should make that determination: the Court or an arbitrator.

17.    Defendant contends that the parties have delegated such questions of arbitrability to the arbitrator. (Mov. Br. at 9–11). Specifically, Defendant cites the portion of the arbitration provision noting that the parties' disputes "SHALL BE SUBJECT TO BINDING ARBITRATION TO BE HELD . . . IN ACCORDANCE WITH THE EMPLOYMENT DISPUTE RESOLUTION RULES THEN IN EFFECT OF THE AMERICAN ARBITRATION ASSOCIATION [( 'AAA')]", and argues that, under those rules, the arbitrator must resolve such questions of arbitrability. (*Id.* at 10–11). This Court agrees, finding that the Third Circuit's guidance in *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020), is dispositive.

18.    In *Richardson*, the Court of Appeals noted that, while parties may delegate questions of arbitrability to the arbitrator, "that delegation requires 'clea[r] and unmistakabl[e]' evidence of the parties' intent." *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Where the parties' agreement specified that their arbitration "shall be subject to . . . the then current Rules of the American Arbitration Association for Commercial Arbitration,'" *id.* (citation omitted), the Third Circuit found: "Clearly and unmistakably then, the AAA Rules govern the arbitration of any dispute between [the parties]." *Id.* As the Employment Agreement between Plaintiff and Defendant includes functionally identical language incorporating the AAA Rules, (Employment Agreement § 5(a)), the Court finds that the parties here have likewise clearly and unmistakably agreed to have those rules govern any arbitration between them.

19.    The motion record reflects that the relevant AAA rule states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, **scope** or validity of the arbitration agreement." (D.E. No. 20-4 at 95–146 (ECF

Pagination) ("AAA Rules"), § 6(a) (emphasis added)). Interpreting a substantially identical rule in *Richardson*,[2] the Court of Appeals observed: "That provision 'is about as "clear and unmistakable" as language can get.'" *Richardson*, 811 F. App'x at 103 (quoting *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009)). The Court of Appeals ultimately found that "the clarity of [the parties'] agreement shows [their] intent to delegate . . . arbitrability." *Id.* at 104. For the same reasons that the Third Circuit articulated in *Richardson*, this Court finds that the parties have agreed to delegate questions regarding the scope of arbitration agreement (i.e., whether it applies to Plaintiff's claims in this case) to the arbitrator. Having made that determination, the Court's analysis is complete. *Blueprint Cap. Advisors, LLC v. Div. of Inv.*, No. 23-1116, 2023 WL 8866554, at *3 (3d Cir. Dec. 22, 2023) ("We therefore hold that the arbitration clause clearly and unmistakably delegates the threshold arbitrability question, and an arbitrator must determine whether [the plaintiff's claims] are arbitrable."). The parties must proceed to arbitration in accordance with the Employment Agreement.

20.    As the Court has found that the parties must submit Plaintiff's claims to arbitration, and considering that Plaintiff has not requested that the Court stay this matter pending arbitration, (*see generally* Opp. Br.), the Court will dismiss the Complaint, *without prejudice*, in the interest of judicial economy. *See, e.g.*, *Thompson v. Integrity Staffing Sols., Inc.*, No. 21-12696, 2022 WL 1547586, at *4 (D.N.J. Feb. 23, 2022)); *Ricci v. Sears Holding Corp.*, No. 14-3136, 2015 WL 333312, at *6 (D.N.J. Jan. 23, 2015).

---

[2] The AAA rule at issue in *Richardson* stated: "'[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'" *Id.* (citation omitted).

An appropriate Order has been submitted in connection with this Opinion.

_s/ Esther Salas_____
**Esther Salas, U.S.D.J.**

Date:  October 2, 2025

Cc:    Hon. Leda D. Wettre, U.S.M.J.